**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| E. RUTHANN NEFF, | : | |
| Plaintiff, | : | Case No. 3:12cv00120 |
| vs. | : | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | : | Chief Magistrate Judge Sharon L. Ovington |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff E. Ruthann Neff brings this case challenging the Social Security Administration's denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Plaintiff filed her SSI and DIB applications on February 26, 2008, asserting that she has been under a "disability" since November 1, 2007.[2] (*PageID##* 224-30, 231-33). Plaintiff claims to be disabled due to a right knee injury with torn cartilage, a bulging disc in her neck, hemorrhoids, stomach problems, a left lung polyp, and a fast heart beat. (*See PageID#* 258).

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Plaintiff previously filed for DIB, the application was denied on October 15, 2004 and she did not appeal the denial. (*PageID##* 141, 147-49, 219-23).

After various administrative proceedings, Administrative Law Judge (ALJ) Amelia G. Lombardo denied Plaintiff's applications based on her conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (*PageID##* 68-79). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. This Court has jurisdiction to review the administrative denial of her applications. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. # 12), the administrative record (Doc. # 6), and the record as a whole.

## II. BACKGROUND

### A. Plaintiff's Vocational Profile and Testimony

Plaintiff was 41 years old on her alleged disability onset date, which defined her as a "younger individual" for purposes of resolving her DIB and SSI claims. *See* 20 C.F.R. §§ 404.1563(c); 416.963(c)[3]; (*PageID##* 77, 224). Plaintiff attended two years of college, *see* 20 C.F.R. § 404.1564(b)(4); (*PageID#* 264), and has past relevant employment as a stock clerk. (*PageID#* 128).

---

[3] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

Plaintiff testified that she stopped working in November 2007 due to having surgery on her left foot and ankle. (*PageID#* 105). Her employer held her job for a year, but she was unable to return to work. (*Id.*).

She had her first knee surgery in January 2004, and was off work for nine months before returning. (*PageID#* 106). While she continued to work through 2007, she was also found to have a bulging disk in her neck. (*Id.*). She reported having problems with her other knee, her back, tachycardia, and depression. (*PageID##* 107, 111).

Plaintiff began using a walker because her "doctors [ ] tell [her] to use it because of [her] leg." (*PageID#* 106). She testified that she cannot walk without using her walker. (*PageID#* 116). At the time of the hearing, Plaintiff was not receiving treatment for her knee because she was told there was nothing "they could do." (*PageID#* 113). She said her knee locks up and will not bend. (*PageID##* 113-14).

Plaintiff testified that, since her surgeries, her knee will not bend and "it causes me a lot of pain." (*PageID#* 107). Plaintiff testified that she attended physical therapy after surgery, "but they said there was nothing more that they could do, it didn't – it didn't work, the surgery didn't work to repair it." (*PageID#* 108). Plaintiff insisted that she "went to therapy" despite transportation challenges, and did not know why her medical records stated that she had failed to attend her scheduled therapy sessions. (*PageID#* 109).

Plaintiff has a driver's license and drives occasionally – when she "feel[s] up to it." (*PageID#* 104). She reported problems with standing, noting she "can stand for a

little bit." (*PageID*# 116). If her leg is elevated, she can sit. (*Id.*). Plaintiff testified that she has carpel tunnel syndrome and drops things. (*PageID*# 116). She estimated that she could lift only five pounds. (*PageID*# 117). Plaintiff testified that she lives with her boyfriend and his mother. (*PageID*# 103). She reported doing no housework: her boyfriend's mother does all the cooking, dishes, and laundry. (*PageID*## 117-18).

### B. <u>Medical Opinions</u>

Plaintiff relies on the opinions of her treating primary care physician, Han Mok Yang, M.D. The record shows that Dr. Yang treated Plaintiff from November 21, 2006, through at least March 5, 2010. (*PageID*## 730-40, 944-77). Dr. Yang's clinical notes reveal that Plaintiff was seen mostly for checkups and prescribed medication. Plaintiff's complaints included right knee pain; back and shoulder pain; chest pain; joint pain; and depression. (*PageID*## 948, 966, 968, 975). By September 15, 2009, Plaintiff reported that she had no strength and was using a walker. (*PageID*# 951). Examination on November 3, 2010, revealed she had joint swelling. (*PageID*# 949).

On October 30, 2008, Dr. Yang completed a medical update form on behalf of Plaintiff's short term disability carrier. Dr. Yang noted that Plaintiff could "never" return to work activity. He also noted that Plaintiff's prognosis was poor. (*PageID*# 236).

Dr. Yang completed a Basic Medical form on behalf of Ohio Department of Job and Family Services on January 15, 2009. (*PageID*## 764-65). Dr. Yang described Plaintiff's medical conditions as tachocardic problems; arthritis; right leg pain and stiffness; chest pain; and hearing loss. Dr. Yang further noted that Plaintiff's health status

was deteriorating. Dr. Yang opined that Plaintiff could not stand/walk or sit in an eight hour workday and she could not lift and carry any weight. Dr. Yang also opined that Plaintiff had marked limitations with respect to hearing, and extreme limitations in her ability to push/pull, bend, handle, and use repetitive foot movements. Dr. Yang concluded that Plaintiff was unemployable and was unable to work for twelve months or more. (*PageID*# 765).

On February 13, 2009, Dr. Yang completed a questionnaire on behalf of the Bureau of Vocational Rehabilitation. (*PageID*## 766-70). Dr. Yang listed Plaintiff's diagnoses as severe arthrosis of the right knee, depression, and chest pain. He reported Plaintiff's limitations were permanent; she was not to lift/carry any amount; and she was not to push/pull. (*PageID*# 766). Dr. Yang noted that Plaintiff was not to perform any work activity; she was never to climb, balance, stoop, crouch, kneel, or crawl; and was never to reach, handle, or finger. In addition, she was unable to cope with the stress of work. (*PageID*# 767). Plaintiff was not released to work. Dr. Yang opined that she could not participate in a training program, and she could not maintain even part-time employment. (*PageID*# 770).

On March 30, 2009, Dr. Yang completed interrogatories on Plaintiff's behalf. (*PageID*## 936-43). Dr. Yang reported that he had treated Plaintiff for three to four years. (*PageID*# 936). Plaintiff had tachocardic problems, right knee stiffness, right leg pain, chest pain, depression, and hearing loss. (*PageID*# 937). Dr. Yang opined that Plaintiff could not work. (*PageID*# 938). Specifically, Dr. Yang reported that Plaintiff

could not lift or carry any weight during a workday, and could not walk/stand any time during a workday because of her knee stiffness. (*PageID*# 939). Dr. Yang also reported Plaintiff could not sit for any time during a workday because of her knee stiffness, and was never to climb, balance, stoop, crouch, kneel, or crawl. (*PageID*# 940). She also had limits in her hearing, reaching, handling, fingering, feeling, and pushing/pulling abilities. She was restricted from heights, moving machinery, chemicals, dust, noise, fumes, and humidity. (*PageID*# 941). She could not perform even sedentary work activity, and it was estimated she would be absent from work more than three times a month. (*PageID*# 943).

Dr. Yang completed a second set of interrogatories on October 27, 2009. (*PageID*## 823-30). Dr. Yang listed Plaintiff's medical problems as knee pain/stiffness and depression. He again opined that Plaintiff could not work. (*PageID*# 824). Dr. Yang noted that she could not lift or carry anything during a workday, and was not to stand or walk during a workday. (*PageID*# 826). She could not sit during a workday because she could not bend her right knee. She was never to climb, balance, stoop, crouch, kneel, or crawl. (*PageID*# 827). She was restricted from heights, moving machinery, chemicals, dust, noise, and fumes. (*PageID*# 828). Dr. Yang concluded that Plaintiff could not perform even sedentary work activity. (*PageID*# 830).

Plaintiff also relies on the opinion of her treating podiatrist, Gary Labianco, D.P.M., whom she began treating with on September 19, 2007. She presented with

complaints of a left heel spur. Conservative treatment versus surgical correction was discussed. (*PageID*## 719-20).

On March 12, 2008, Dr. Labianco reported that Plaintiff has been having a large amount of difficulty ambulating secondary to a partially ruptured Achilles tendon and with a large retrocalacanel bursitis coupled with the inability to move her right knee: "She has accelerated arthritis there and she now has foot pain on the left and a knee that doesn't work on the right." (*PageID*# 478). Dr. Labianco opined that Plaintiff should be considered disabled, as she will find great difficulty in moving around until her heel and/or knee are in better condition. At the time of his teledictation report, Plaintiff was attending physical therapy for the heel, but Dr. Labianco noted that she was possibly going to need a right knee replacement in the future. (*Id.*).

Dr. Labianco noted in February and March 2008 that Plaintiff's heel pain had "greatly decreased"; Plaintiff did "very well in physical therapy" for her foot; and her condition was stable. (*PageID*# 714).

Dr. Labianco submitted another teledictation report on May 15, 2008, reporting that Plaintiff suffers from acute Achilles tendonitis and has had surgery to correct it. Additionally, Dr. Labianco noted she has a nonfunctional right knee problem. Dr. Labianco opined that "it would be very difficult for her to function from now on with the left Achilles tendon problem and the right knee that does not bend." (*PageID*# 510).

The Commissioner relies on the opinions of several non-treating medical professionals.

James Gahman, M.D., reviewed the file on behalf of the Ohio Bureau of Disability Determination on April 22, 2008. (*PageID##* 492-500). Dr. Gahman concluded that Plaintiff could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. (*PageID#* 494). Dr. Gahman opined that Plaintiff should not constantly alternate between a sitting and standing position. Dr. Gahman believed Plaintiff would be able to sit for unlimited periods of time, and once standing, she could stand and walk for periods of 15 minutes at a time (totaling 4 hours out of a normal workday). (*PageID#* 495). Plaintiff could never climb ladders, ropes, or scaffolds or kneel, crawl, or crouch. (*Id.*). She could only occasionally climb ramps/stairs, stoop, and crouch. (*Id.*). Dr. Gahman also found that Plaintiff should never work around hazards such as machinery or heights. (*PageID#* 497). Dr. Gahman concluded that Plaintiff's symptoms were attributable to a medically determinable impairment. (*PageID#* 498). Dr. Gahman found Plaintiff's statements were only partially credible, noting that the constant pain Plaintiff alleges is not supported by the medical evidence of record. He concluded that Plaintiff's statements are credible in nature, but not in severity of functional impact. (*Id.*). Another state agency physician, Gerald Klyop, M.D., affirmed Dr. Gahman's assessment on July 10, 2008. (*PageID#* 557).

The Commissioner also relies on the observations of treating specialists. Plaintiff underwent two surgical arthroscopies of her right knee, and three manipulations of her right knee in 2004. (*PageID##* 310-55, 558-65). Following surgery, her orthopedic surgeon, Frank Noyes, M.D., reported compliance issues, including her failure to perform

her home exercises. (*PageID##* 368-77). Dr. Noyes noted that his office had helped her regain motion three times, only to "have her pattern revert back" to her original condition due to non-compliance. (*PageID##* 369, 372).

Plaintiff began treating with Thomas Cook, D.O., in February 2008 due to her right knee pain. (*PageID#* 703). In March 2008, Dr. Cook observed that Plaintiff "has apparently a block to her ability to flex her knee" and "she possibly may have a mental block." (*PageID#* 698).

In April 2008, Dr. Cook reported that Plaintiff was making poor progress in therapy. He believed that she had pain syndrome and recommended a psychiatric evaluation and a chronic pain specialist evaluation, which she declined. (*PageID#* 502).

**C. Vocational Expert Testimony**

In addition to Plaintiff, a vocational expert (VE), William Braunig, testified at the administrative hearing. He classified Plaintiff's past work as a stock clerk as heavy and semi-skilled. (*PageID#* 128).

He was asked to consider an individual with the same age, education and work experience as Plaintiff, who was limited to no more than light work. (*PageID#* 128). With those restrictions, the VE testified that Plaintiff could not perform her past work. (*Id.*).

If Plaintiff were further limited to no kneeling, crouching and crawling; and only occasional stooping and balancing; and for light jobs, no more than four hours of standing and walking; the VE testified that Plaintiff could perform the requirements of unskilled,

light occupations such as a production assembler, photo copy machine operator, or mail sorter (with 9,000 jobs in the regional area). (*PageID#* 128). At the sedentary level, the VE testified there would be 5,700 positions, such as a dowel inspector, lens inserter, or file assembler. (*PageID#* 129). If the individual needed to use a walker, the light jobs would be reduced to approximately 7,000 positions, but the sedentary positions would not be affected due to the positions being stationary. (*PageID#* 131).

## III. ADMINISTRATIVE REVIEW

### A. "Disability" Defined

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B. ALJ Lombardo's Decision

ALJ Lombardo resolved Plaintiff's disability claim by using the five-Step sequential evaluation procedure required by Social Security Regulations. *See PageID##* 69-70; *see also* 20 C.F.R. § 404.1520(a)(4). Her pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff had the following severe impairments: residual effects of several right knee surgeries; arthrofibrosis of the right knee; and depression. (*PageID#* 70).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner Listing of Impairments. (*PageID#* 71).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work but it could only be unskilled work, with no kneeling, crouching, or crawling, and only occasional stooping and balancing. (*PageID##* 73).

The ALJ concluded at Step 4 that Plaintiff is unable to perform her past relevant work. (*PageID#* 77). At Step 5, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy. (*PageID##* 77-78).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI. (*PageID#* 78).

## IV. <u>JUDICIAL REVIEW</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ

applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers,* 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

546-47 (6th Cir. 2004)).

## V. DISCUSSION

### A. Plaintiff's Contentions

Plaintiff assigns three errors in this case. Plaintiff contends the ALJ erred at Step 3 of the sequential evaluation by finding that her musculoskeletal impairment did not meet the criteria set forth in Listing 1.02. (*PageID#* 1008). Plaintiff also argues that the ALJ erred in her evaluation of treating physician, Dr. Yang's opinion. (*PageID#* 1009). According to Plaintiff, the overwhelming medical evidence supports Dr. Yang's opinion, and the ALJ erroneously relied on the opinions of the nonexamining State agency reviewers. (*PageID#* 1012). In addition, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's credibility. (*PageID#* 1013).

### B. Analysis

Plaintiff argues that the ALJ committed reversible error in failing to find her disabled under Social Security Listing 1.02, which provides in pertinent part:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), *resulting in inability to ambulate effectively*, as defined in 1.00B2b . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02 (emphasis added). An inability to ambulate effectively means an "extreme limitation of the ability to walk." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1). Ineffective ambulation is generally defined "as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the function of both upper extremities." (*Id.*). A person ambulates effectively if they are "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living . . . [and can] travel without companion assistance to and from a place of employment." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(2). Ultimately, the Plaintiff bears the burden of establishing that he was disabled under Listing 1.02. *See Rabbers*, 582 F.3d at 653.

In this case, the ALJ began her Step 3 analysis with the following statement regarding whether Plaintiff's physical impairments met or equaled the criteria set forth in Listing 1.02:

> The severity of the claimant's impairments does not meet or equal the level of severity of an impairment described in section 1.02 (major dysfunction of a joint), or any other section of Appendix 1, Subpart P, Regulations No. 4.

(*PageID##* 71-72).[4] The ALJ then proceeded to discuss, and thoroughly analyze, whether Plaintiff's mental impairments met or equaled the criteria set forth in section 12.00 of the Listings. She concluded they did not, and proceeded to the next step in the 5-step analysis.

---

[4]The Listing of Impairments is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

The ALJ, however, never provided any further discussion or analysis as to why or how she reached her conclusion that Plaintiff's physical impairments did not meet or equal the criteria set forth in Listing 1.02.

Plaintiff argues that the ALJ "simply wrote [ ] one sentence" and she gave no reason for not finding that Plaintiff met or equaled Listing 1.02. (Doc. #8, *PageID##* 1008-09). The Commissioner argues that Plaintiff has not shown that she meets the Listing. (Doc. #11, *PageID##* 1027-31).

Defendant correctly notes that the burden of proof rests with Plaintiff at Steps 1-4. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The Commissioner, however, is also required to provide more than a bare conclusion when making findings of fact and decisions as to the rights of individuals applying for disability. Specifically, the Social Security Act requires the following:

> The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this title [42 USCS §§ 401 et seq.]. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based ...

42 U.S.C. § 405(b)(1).

Absent such an analysis, the Court cannot effectively evaluate whether the ALJ's Step 3 decision is supported by substantial evidence. *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011) ("In short, the ALJ needed to actually evaluate the

evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.") (other citations omitted).

The lack of explanation at Step 3 likewise cannot be said to be harmless error in this case. It is possible that application of harmless error may be appropriate where a review of material that the ALJ considered elsewhere in the decision would make it abundantly clear that no reasonable factfinder, following the correct procedure, could have resolved the factual matter in another manner, however, that is not the case here. *See, e.g., Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005) (holding an ALJ's findings at Step 4 and 5 precluded a claimant from qualifying for a listing under Step 3); *see also Neal ex. rel. Walker v. Barnhart*, 405 F.3d 685, 689 (8th Cir. 2005) ("Harmless error analysis may be appropriate to supply a missing dispositive finding in a social security disability proceeding, where, based on material the ALJ considered, the court can confidently say that no reasonably administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

Based on a review of the material the ALJ considered elsewhere in her decision, it cannot be said that a reasonable factfinder, following the correct procedure, could not have resolved the Step 3 finding in another manner.

For example, evaluation of two of the characteristics under Listing 1.02 illustrates that a reasonable factfinder might very well have found that Plaintiff's impairments met or

equaled Listing 1.02(A). One characteristic under Listing 1.02(A) is chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint. *See* Listing 1.02(A). The ALJ found that Plaintiff does, in fact, have the following severe impairments: residual effects of several right knee surgeries and arthrofibrosis of the right knee. (*PageID#* 70). Further, the ALJ indicated that Plaintiff's right knee pain limits function. (*PageID##* 74, 77). The record shows that Plaintiff had some decreased range of motion and was unable to fully extend her right knee. (*PageID##* 339, 369, 372, 379-80, 463, 572-77, 780). Plaintiff used a walker at the hearing and testified "my doctors [ ] tell me to use it because of my leg." (*PageID#* 106). She testified that she cannot walk without her walker. (*PageID#* 116). The record shows after Achilles tendon surgery, she used a walker. (*PageID##* 116, 432, 465, 544, 849). The record also shows Plaintiff walked with crutches. (*PageID#* 687). In addition, an April 22, 2008 Request for Medical Advice from the State agency was submitted requesting if she met or equaled an inability to ambulate effectively listing. (*PageID#* 978). The foregoing evidence and findings by the ALJ might lead a reasonable factfinder to reach a determination that Plaintiff does, in fact, have chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint – one of the characteristics under Listing 1.02(A).

Another characteristic under Listing 1.02(A) is gross anatomical deformity. *See* Listing 1.02(A). One example of a gross anatomical deformity, as specified in Listing 1.02(A), is instability. The ALJ indicated that Plaintiff was unable to kneel, crouch or crawl and could only occasionally stoop and balance. (*PageID#* 73). These indications

are based on Dr. Gahman's evaluation of the medical record. (*PageID#* 495). This evidence might lead a reasonable factfinder to reach a determination that Plaintiff does, in fact, have a gross anatomical deformity (i.e., instability, within the meaning of Listing 1.02(A)).

A full review and analysis after remand may not, of course, result in a disability finding at Step 3. Upon reviewing the evidence in this case, however, the Court cannot rule out such a possibility entirely. Based on the foregoing, therefore, application of the harmless error doctrine is not warranted in this instance.

Accordingly, for all of the above reasons, Plaintiff's argument is well taken.[5]

## VI. <u>REMAND IS WARRANTED</u>

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of*

[5] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining assignments of error is unwarranted.

*Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) due to problems set forth above. On remand the ALJ should be directed to evaluate Plaintiff's disability claim under the required 5-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for SSI should be granted.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff E. Ruthann Neff was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and,

4. The case be terminated on the docket of this Court.

April 29, 2013

s/Sharon L. Ovington
Sharon L. Ovington
Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(c), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).